**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **GEORGE W. HALLIBURTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:11-CV-109 (MTT)** |
| | ) | |
| **PEACH COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, TERRY W. DEESE,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on the Defendants' Motion for Summary Judgment.  (Doc. 31).  Plaintiff George Halliburton alleges violations of 42 U.S.C. §§ 1981 and 1983, Title VII, and 42 U.S.C. § 1988.  Halliburton alleges that these violations stem from the promotion of Donnie Martin, a white male, instead of Halliburton, a black male, to captain in charge of the Peach County Sheriff's Department's Investigations Division.  (Doc. 1 at ¶¶ 13, 34).  For the following reasons, the Defendants' Motion is **GRANTED**.  (Doc. 31-2).

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff George Halliburton and Defendant Sheriff Terry Deese have known each other for twenty-seven years.  (Doc. 31-1 at 1).  While Halliburton was employed by the Crawford County Sheriff's Department and Sheriff Deese was employed by the Peach County Sheriff's Department, they worked together on a multi-county drug task force.  (Doc. 31-1 at 2).  Terry Deese became Sheriff of Peach County in January 2005.  (Doc. 31-1 at 2).  The Peach County Sherriff's Department has three divisions—patrol,

investigations and the jail.  Each division is headed and supervised by a captain.  When

Sheriff Deese took office, he asked Halliburton to come work for the Peach County

Sheriff's Department as a sergeant in the Investigations Division.  (Doc. 31-1 at 2).

In March 2009, the then-captain of the Investigations Division, Cordell Jackson,

passed away.  Initially, Sheriff Deese handled Jackson's duties himself; however, in

June 2010, he decided to hire a new captain for the Investigations Division.  (Doc. 31-1

at 2).  The Peach County Sheriff's Department has no policy or regulation requiring the

Sheriff to post or advertise open positions.  Sheriff Deese did not advertise or post the

open captain position, and he ultimately made the hiring decision on his own.  (Doc. 31-

1 at 3).  Further, because Sheriff Deese has not opted into the Peach County Civil

Service System, the County has no control over the management of his employees.

(Doc. 31-1 at 3).

According to Sheriff Deese, he wanted to hire Cornelius Flowers, a black male, to

fill the position.  But Sheriff Deese was told by the Georgia Bureau of Investigations that

Flowers was the subject of a criminal investigation.  Then, Sheriff Deese decided to hire

Lynn Eason, another black male, but learned that Eason was being investigated by

POST[1] and no longer had any arrest authority.  (Doc. 31-1 at 3).  Sheriff Deese alleges

he considered Kenny Cameron and John Edwards, both white males, but ultimately

determined neither was suited for the captain position.

Eventually, Deese decided to offer the position to Donnie Martin, a white male,

who accepted and became captain of the Investigations Division on August 9, 2010.

(Doc. 31-1 at 3).   Deese alleges that Martin had administrative experience, was willing

---

[1] POST stands for Peace Officers Standards and Training.

to learn and adapt to new procedures, and had "experience and training in various facets of law enforcement." (Doc. 31-2 at 6).

Sheriff Deese contends that Halliburton was never considered for the captain position. (Doc. 31-1 at 4). According to Deese, Halliburton was a "good street level investigator." (Doc. 31-2 at 3). However, Deese believed that Halliburton was not suited for a supervisory position. Sheriff Deese alleges that Halliburton was unable to accept supervision and direction, and that "Halliburton ha[d] commented to Deese that he doesn't think that there should be supervisors." (Doc. 31-1 at 4). Further, he alleges that Halliburton takes himself too seriously, had problems relating to others in the office, and disregarded policies and procedures. (Doc. 31-2 at 4). Moreover, Deese contends Halliburton, until recently, refused to work on the computer and check his voicemails. (Doc. 31-2 at 4).

Along with the above concerns, Sheriff Deese points to additional two reasons that he did not consider Halliburton for the captain position. First, Sheriff Deese alleges that Halliburton took an individual who was under investigation for burglary to Waffle House and bought him lunch on the way to the police station. While at Waffle House, the individual took off running when Halliburton permitted him to go smoke a cigarette outside. (Doc. 31-2 at 5). Second, Sheriff Deese alleges that Halliburton refuses to use a holster or carry a loaded gun. (Doc. 31-2 at 6). Halliburton contends that Sheriff Deese never spoke to him about these concerns; therefore, he never modified his behavior accordingly. (Doc. 34-1 at 3). Further, Halliburton does not dispute the existence of Sheriff Deese's concerns, but instead explains the reasoning behind his actions or inactions.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

## III.  DISCUSSION

Halliburton alleges violations of 42 U.S.C. §§ 1981 and 1983, Title VII, and 42 U.S.C. § 1988 against the Peach County Sheriff's Department, Peach County, and Sheriff Terry Deese, both in his individual and official capacities.

## A.    Defendant Peach County Sheriff's Department

Defendant Peach County Sheriff's Department contends it is not a legal entity capable of being sued.  Halliburton did not respond to the Sheriff's Department's contention.

The issue of whether a government entity is capable of being sued is "determined by the law of the state in which the district court is held."  Fed. R. Civ. P. 17(b); *accord Lawal v. Fowler*, 196 Fed. App'x 765, 768 (11th Cir. 2006).[2]  Under

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

Georgia law, only three classes of legal entities are capable of being named in a lawsuit: (1) natural persons; (2) artificial persons (a corporation); and (3) quasi-artificial persons as the law recognizes as being capable to sue. *Lawal*, 196 Fed. App'x at 768 (citing *Ga. Insurers Insolvency Pool v. Elbert Cnty.*, 258 Ga. 317, 368, 368 S.E.2d 500 (1988)). A sheriff's office does not fall into any of the categories and therefore is not capable of being sued. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *Ashley v. Chafin*, 2009 WL 3074732 (M.D. Ga.). The Court finds no basis for allowing Halliburton to sue the Peach County Sheriff's Department. Therefore, summary judgment is **GRANTED** with regard to Halliburton's claims against the Peach County Sheriff's Department.

## B.    Defendant Peach County

Halliburton apparently seeks to hold Peach County liable pursuant to Title VII and 42 U.S.C. §§ 1983 and 1981 for Sheriff Deese's failure to promote Halliburton to captain of the Investigations Division. Peach County contends it cannot be held liable pursuant to any of Halliburton's theories of recovery. Halliburton does not respond, specifically, to Peach County's contentions. Halliburton, without citing any authority, only alleges:

> It is acknowledged that the Sheriff's Office of Peach County is not under the authority and control of the government of Peach County nor has the Peach County Sheriff's Office adopted any personnel policies and procedures that may exist for Peach County. However, under 42 USC 2000(e) (Title VII) the county does not escape liability. It is the employer in the sense that it provides the funds for the sheriff's department and through this power can exert power and control over its operations.

(Doc. 34-2 at 10).

1.  **Title VII Claim**

Halliburton's Title VII claim may only be made against his "employer."  42 U.S.C.

§ 2000e-2(a)(1).  Halliburton seeks to hold both Peach County and Sheriff Deese liable

as his employer, in effect arguing that he was an employee of both Peach County and

the Sheriff.

A person or entity's status as an employer is a matter of federal law, but state law

is relevant insofar as it informs the analysis of the employment relationship.  *Calderon v.

Martin Cnty.*, 639 F.2d 271, 273 (5th Cir. 1981).[3]  In Georgia, the office of Sheriff is an

elected constitutional office, independent from the county and its governing body.  Ga.

Const. art. IX, § 2, ¶ 1(c)(1).  Pursuant to Article IX of the Georgia Constitution and

O.C.G.A. § 15-16-23, Sheriffs have the sole responsibility to hire and fire employees

and to direct and control their duties and daily activities.  However, Georgia Sheriffs can

elect to place their employees in a county's civil service system, and if they do, their

personnel authority may be limited.  *Wayne Cnty. v. Herrin*, 210 Ga. App. 747, 753, 437

S.E.2d 793 (1993).  Significantly, Sheriff Deese has not opted into the Peach County

Civil Service System.  (Doc. 31-1 at 3).  A county can take no action affecting a Sheriff's

employees when the Sheriff has not placed his office under the county's civil service

system.  *Grech v. Clayton County, Georgia*, 335 F.3d 1326, 1338 (11th Cir. 2003)

(internal quotation marks and citation omitted).  There is no evidence in the record

suggesting Peach County had any involvement in the decisions giving rise to

Halliburton's claim.  It is clear to the Court that Peach County does not have the

authority to hire, transfer, promote, discipline, or discharge employees of the Sheriff.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Accordingly, because Peach County is not Halliburton's employer for purposes of Title VII, summary judgment is **GRANTED** on Halliburton's Title VII claim against Peach County.

### 2. Section 1981 Claim

Section 1981 does not provide a cause of action against state actors. *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000). Section 1981 claims against state actors must be brought pursuant to 42 U.S.C. § 1983 because "§ 1983 provides the exclusive remedy against state actors for violations of the rights contained in § 1981." *Id.* at 893 (citing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)). Because Peach County is a state actor, Halliburton's § 1981 claim against Peach County is inappropriate. Therefore, summary judgment is **GRANTED** on Halliburton's § 1981 claim against Peach County.

### 3. Section 1983 Claim

With regard to Halliburton's § 1983 claim, Peach County contends that Sheriff Deese was acting on his own behalf, not for the County. The County alleges that Deese is not an agent or employee of Peach County, but rather he "is an autonomous constitutionally elected official," and therefore the County cannot be held liable for Deese's actions. (Doc. 31-2 at 8).

Generally, the Eleventh Circuit has "rejected the notion that a Georgia county can be liable under § 1983 for the actions of members of a sheriff's office, finding that, pursuant to the Georgia Constitution, a sheriff's office is independent from the county in which it operates." *Townsend v. Coffee County., Ga.*, 854 F. Supp. 2d 1345, 1350 (S.D. Ga. 2011) (citing *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1332, 1335 (11th Cir.

2003)). Because Sheriffs and their deputies are considered actors of the state, as opposed to the county, "counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function." *Grech*, 335 F.3d at 1336. "Sheriffs alone hire and fire their deputies." *Id.* at 1336. "Georgia courts also speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities." *Id.* at 1337 (citing *Wayne Cnty. Bd. of Comm'rs v. Warren*, 236 Ga. 150, 223 S.E.2d 133, 134 (1976)).

Further, in light of the strict limitations on municipal liability under section 1983, a county will be held responsible only when the county's "official policy" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff can establish an official policy of the county by showing either (1) an officially promulgated policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Id.* at 690-91. Thus, to succeed on this claim, Halliburton must show any alleged constitutional violations were the result of some custom or policy over which Peach County had some degree of control or responsibility.

Here, Halliburton alleges no Peach County policy or custom that caused his alleged constitutional injury. Therefore, summary judgment is **GRANTED** on Halliburton's § 1983 claim against Peach County.

## C.    Defendant Sheriff Terry Deese

Halliburton's remaining claims are alleged against Sheriff Deese for failing to promote him to position of captain of the Investigations Division based on his race. He

seeks to hold Sheriff Deese responsible pursuant to 42 U.S.C. §§ 1981 and 1983, in his individual and official capacities, and pursuant to Title VII.

### 1. Section 1981 Official Capacity Claim

Sheriff Deese alleges that "he can have liability under § 1981 only in his individual capacity." (Doc. 31-2 at 8). "A claim against a sheriff in his official capacity is equivalent to a claim against the county." *Rasor v. Rice*, 2006 WL 485121, *7 (M.D. Fla) (citing *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1545-46 n. 2 (11th Cir. 1996)). Section 1981 does not provide a cause of action against state actors. *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000). Section 1981 claims against state actors must be brought pursuant to 42 U.S.C. § 1983 because "§ 1983 provides the exclusive remedy against state actors for violations of the rights contained in § 1981." *Id.* at 893 (citing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)). Plaintiffs can only sue individually named Defendants in their official capacities pursuant to § 1983. *Redding v. Tuggle*, 2006 WL 2166726, *10 (N.D. Ga.). Therefore, summary judgment is **GRANTED** on Halliburton's § 1981 claim against Sheriff Deese in his official capacity.

### 2. Section 1983 Official Capacity Claim

Deese argues that, in his official capacity he is entitled to Eleventh Amendment immunity because in determining whether to hire or promote Halliburton, he was functioning as an arm of the State of Georgia. (Doc. 31-2 at 10). When functioning as an arm of the state, a Georgia Sheriff enjoys Eleventh Amendment immunity from § 1983 claims for money damages or other retrospective relief brought against him in his official capacity. *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d

1313, 1325 (11th Cir. 2005). However, the Eleventh Circuit has "declined to determine

that a Georgia sheriff wears a 'state hat' for all functions." *Id.* District courts in Georgia

have thoroughly examined the issue and determined that Sheriffs and their officers are

not a division or subunit of the county in which they reside or of that county's governing

body under the Georgia Constitution and Georgia State Code. *Redding*, 2006 WL

2166726 at *7-8; *see also Bd. of Comm'rs of Randolph County v. Wilson,* 260 Ga. 482,

482, 396 S.E. 2d 903, 903 (1990) ("The sheriff ... is an elected, constitutional officer; he

is subject to the charge of the General Assembly and is not an employee of the county

commission."); *Manders v. Lee,* 338 F.3d 1304, 1347 (11th Cir. 2003) (holding that in

the context of establishing use-of-force policy and training and disciplining deputies, a

sheriff is an "arm of the state").

The Court is not holding that Sheriffs and their employees *always* act as arms of

the state; however, it is clear that in the context of employment decisions Sheriffs and

their employees are state officers. O.C.G.A. § 15-16-23 (Sheriff's offices are

independent of the county in which they are located with respect to employment

decisions and actions); *see Wilson*, 260 Ga. at 483, 396 S.E. 2d at 905 ("the board of

commissioners cannot discharge the sheriff's deputies"). Therefore, because the

Eleventh Amendment prohibits damages suit against state officials acting in their official

capacities, summary judgment is **GRANTED** on Halliburton's § 1983 claim against

Sheriff Deese in his official capacity.

### 3. Title VII and §§ 1981 and 1983 Individual Capacity Claims

Halliburton brings a claim of failure to promote based on race pursuant to Title VII

and 42 U.S.C. §§ 1981 and 1983. Sections 1981 and 1983 claims and Title VII claims

generally "have the same requirements of proof and use the same analytical framework," thus the Court can "address the Title VII claim with the understanding that the analysis applies to the § 1981 [and § 1983] claim[s] as well." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, the Court will address Halliburton's Title VII claim with the understanding that the same analysis applies to his §§ 1981 and 1983 claims.

In the absence of direct evidence, Halliburton, like most plaintiffs alleging race discrimination, relies on circumstantial evidence and the framework for analyzing circumstantial evidence first applied in in *McDonnell Douglas Corp. v.* Green, 411 U.S. 792 (1973).[4]  Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination.  With regard to a failure to promote claim, a plaintiff must establish that "(1) [he] is a member of a protected class; (2) [he] was qualified and applied for the promotion [or position]; (3) [he] was not promoted; and (4) someone outside [his] protected class was promoted."  *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998).

Deese alleges that Halliburton has not established a prima facie case.  Deese admits that Halliburton established prongs (1), (3) and (4), but contends that Halliburton has not established prong (2).  (Doc. 31-2 at 13).  Although Deese concedes that he had some reason to consider Halliburton for the captain position, he alleges that Halliburton was not qualified for the open captain position.  Deese alleges that Halliburton lacked supervisory qualifications, and thus, cannot make out a *McDonnell Douglas* prima facie case.

---

[4] Halliburton cites no other cases, other than those in the summary judgment standard, to support his response to the Defendants' Motion.

Halliburton alleges that he has been in law enforcement for over twenty-six years as a criminal investigator and drug investigator.  Further, during his career he received numerous commendations and awards for his investigatory work.  Without making any legal conclusion, the Court will assume for purposes of this Motion that Halliburton was qualified for a promotion to captain of the Investigations Division.   Therefore, Halliburton has established a prima facie case pursuant to *McDonnell Douglas.*

If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  The burden then returns to the plaintiff to prove that the employer's reasons are a pretext for discrimination.  *Id.* at 253.  The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000).  If a defendant articulates more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive summary judgment. *Id.* at 1037.  Thus, "[a] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated

reasons for its decision are not believable." *Howard v. B.P. Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994).

Here, Sheriff Deese contends that Halliburton was never considered for the captain position. (Doc. 31-1 at 4). According to Deese, Halliburton was a "good street level investigator." (Doc. 31-2 at 3). However, Deese believed that Halliburton was not suited for a supervisory position. Sheriff Deese alleges that Halliburton was unable to accept supervision and direction, and Halliburton had commented that he did not think there should be supervisors. Further, Deese alleges that Halliburton takes himself too seriously, had problems relating to others in the office, and disregarded policies and procedures. (Doc. 31-2 at 4). Moreover, Deese alleges that Halliburton, until recently, refused to work on the computer and check his voicemails. (Doc. 31-2 at 4).

Along with the above concerns, Sheriff Deese points to two more specific concerns that precluded him from considering Halliburton for the captain position. First, Deese alleges that the Waffle House incident is a legitimate reason that he did not consider Halliburton for the captain position. (Doc. 31-2 at 5). Second, Deese alleges that Halliburton refuses to use a holster or carry a loaded gun, and that Halliburton refuses to wear the Department-issued uniform. (Doc. 31-2 at 6).

Halliburton does not dispute any of Deese's alleged concerns. Rather, he explains why he took or did not take some action. First, Halliburton contends that Deese never expressed any of these problems directly to him. Instead, according to Halliburton, the now deceased Captain Jackson would talk to him about any issues, but never directed Halliburton to change his behavior. Halliburton alleges had Deese spoken to him directly, he would have modified his behavior to comply with Deese's

wishes.  (Doc. 34-1 at 3).  With regard to the Waffle House incident, he alleges that the individual was not under arrest, and that he did not feel that he had sufficient cause to restrain the individual.  (Doc. 34-1 at 8).  He also alleges that he did not wear a holster, but instead wore his gun in his waistband out of habit from working undercover.  (Doc. 34-1 at 5).  Halliburton contends he has taken steps to learn how to use computers more efficiently. (Doc. 34-1).  Halliburton also contends that his comment regarding supervisors was taken out of context and was made during a discussion when Deese was expressing dissatisfaction with the former Sheriff and how that Sheriff managed supervisors.

While Halliburton has offered explanations for his actions, this does not necessarily create genuine issues of material facts as to preclude summary judgment. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs, and to be blunt about it, not on reality as it exists outside of the decision-maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (internal citation omitted).  Here, Halliburton is "simply quarreling with the wisdom" of Sheriff Deese's reasons for failing to promote him to the captain position.  He is not meeting Sheriff Deese's reasons "head on" and rebutting them, but rather offering the Court explanations for his actions.   Halliburton simply has not produced any evidence to allow a reasonable finder of fact to conclude that Deese's articulated reasons for promoting Martin instead of Halliburton are not believable.

Halliburton further contends that he was more qualified than Donnie Martin for the captain position.  He alleges that Martin "as supervisor of the Multi-County Task Force … spent most of his time 'fiddling' with paperwork and remained at the task force

office." (Doc. 34-1 at 6). Moreover, he alleges that Deese had been previously displeased with Martin's leadership abilities as a result of his supervisions of two drug agents. (Doc. 34-1 at 9).

If a plaintiff rests solely on his superior qualifications, he cannot simply show that he was better qualified than the individual who was hired instead of him. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). However, evidence that an employer hired a less qualified applicant over a plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was, in fact, pretextual. *Id.* But if a plaintiff alleges disparity in qualification alone to establish pretext, the disparity must be "so superior as to allow a reasonable fact finder to conclude" that the employer's reason for not hiring the plaintiff was pretextual, or the disparity in qualifications should be so significant that no reasonable person in the exercise of impartial judgment could choose the selected candidate over the plaintiff for the job. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001); *Licausi v. Symantec Corp.*, 2009 WL 1873663, *11 (S.D. Fla. 2009).

Here, Halliburton makes no such showing. It is clear that Halliburton is an "outstanding drug investigator" and a successful street-level officer. (Doc. 34-1 at 2-3). However, there is no evidence that the disparity between Halliburton's and Martin's qualifications is "so significant that no reasonable person in the exercise of impartial judgment could choose" Martin over Halliburton for the captain position. Further, there is no evidence of racial discrimination in Sheriff Deese's decision to promote Martin instead of Halliburton. In fact, Deese alleges that other African-American candidates were considered, but were ruled out for various reasons.

Accordingly, Halliburton has failed to establish that Sheriff Deese's legitimate non-discriminatory reasons were pretextual, and thus summary judgment is **GRANTED** on Halliburton's Title VII and §§ 1981 and 1983 failure to promote claims.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment is **GRANTED**.  (Doc. 31).

**SO ORDERED**, this the 26th day of September, 2012.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT